## WETMORE *v.* RYMER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF TENNESSEE.

No. 76. Submitted November 1, 1897. — Decided January 17, 1898.

In an action of ejectment the question whether the land in dispute is of sufficient value to give a Circuit Court jurisdiction is purely one of fact, and the statutes regulating jurisdiction leave the mode of trying such issues to the discretion of the trial judge.

Whether he elects to submit such issue to a jury, or to himself hear and determine it without the intervention of a jury, in either event the parties are not concluded by the judgment of the Circuit Court.

In this case the question was passed upon by the court below on affidavits, and the judgment dismissing the action for want of jurisdiction is reviewable here.

A suit cannot properly be dismissed by a Circuit Court as not involving a controversy of an amount sufficient to come within its jurisdiction, unless the facts, when made to appear on the record, create a legal certainty of that conclusion.

THIS was an action of ejectment, brought in the Circuit Court of the United States for the Eastern District of Tennessee, to recover a tract of land in Polk County. The declaration alleged that the land was worth more than two thousand dollars. The defendants disclaimed as to a portion of the

land, and pleaded not guilty and the statute of limitations as to the remainder.

At the trial, after the plaintiffs' evidence was closed, the defendants moved the court to dismiss the plaintiffs' suit for want of jurisdiction because it appeared that the matter in dispute did not exceed, exclusive of interest and costs, the sum or value of two thousand dollars; but the court suspended action on this motion until the verdict of the jury should be rendered. The defendants then proceeded to introduce their evidence on the matters put in issue by the pleadings, and, after argument of counsel and the charge of the court, the jury found a verdict in favor of the plaintiffs, and assessed their damages for the detention of the premises at one dollar. Thereupon the court rendered judgment on the verdict and a writ of possession and execution accordingly.

But, immediately upon the rendition of the verdict and judgment, the court set them aside, entertained the defendants' motion to dismiss for want of jurisdiction, and gave leave to both parties to file affidavits showing the value of the land in controversy.

Upon consideration of the evidence heard on the trial and of affidavits produced on behalf of the plaintiffs, the court, being of opinion that the value of the matter in dispute was less than two thousand dollars, and that there was not a substantial controversy between the parties of sufficient value to be within the jurisdiction of the court, dismissed the suit for want of jurisdiction, and rendered judgment for costs against the plaintiffs. The plaintiffs excepted to this action of the court; a bill of exceptions was sealed; and a writ of error was allowed to this court.

*Mr. Charles Seymour* for plaintiffs in error.

No appearance for defendants in error.

Mr. JUSTICE SHIRAS, after making the above statement, delivered the opinion of the court.

The first question that arises upon this record is whether

the action of the Circuit Court in dismissing the plaintiffs' action for the want of jurisdiction is reviewable by us. The court acted in pursuance of the fifth section of the act of March 3, 1875, c. 137, 18 Stat. 470, 472, which provided, "that if, in any suit commenced in a Circuit Court or removed from a state court to a Circuit Court of the United States, it shall appear to the satisfaction of said Circuit Court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the said Circuit Court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require, and shall make such order as to costs as shall be just; but the order of said Circuit Court dismissing or remanding said cause to the state court shall be reviewable by the Supreme Court on writ of error or appeal as the case may be."

By the sixth section of the act of August 13, 1888, c. 866, 25 Stat. 433, 436, amending the act of March 3, 1887, it was enacted "that the last paragraph of section five of the act of Congress approved March third, eighteen hundred and seventy-five, entitled 'An act to determine the jurisdiction of Circuit Courts of the United States and to regulate the removal of causes from state courts, and for other purposes,' and section six hundred and forty of the Revised Statutes, and all laws and parts of laws in conflict with the provisions of this act, be and the same are hereby repealed."

Any doubt that may have been caused by this repealing enactment, as to the power to review the judgment of a Circuit Court dismissing a suit for want of jurisdiction, was removed by the act of February 25, 1889, c. 236, 25 Stat. 693, entitled "An act to provide for writs of error or appeals to the Supreme Court of the United States in all cases involving the question of the jurisdiction of the courts below," and which provided "that in all cases where a final judgment or

decree shall be rendered in a Circuit Court of the United States in which there shall have been a question involving the juris-diction of the court, the party against whom the judgment or decree is rendered shall be entitled to an appeal or writ of error to the Supreme Court of the United States to review such judgment or decree without reference to the amount of the same; but in cases where the decree or judgment does not exceed the sum of five thousand dollars the Supreme Court shall not review any question raised upon the record except such question of jurisdiction; such writ of error or appeal shall be taken and allowed under the same provisions as apply to other writs of error or appeals. . . ."

This act of February 25, 1889, was followed by the act of March 3, 1891, c. 517, 26 Stat. 826, which provided, in its fifth section, "that appeals or writs of error may be taken from the District Courts or from the existing Circuit Courts direct to the Supreme Court in the following cases : In any case in which the jurisdiction of the court is in issue; in such cases the question of jurisdiction alone shall be certified to the Supreme Court from the court below for decision."

These provisions of the several statutes plainly disclose the intent of Congress that a party whose suit has been dismissed by a Circuit Court for want of jurisdiction shall have the right to have such judgment reviewed by this court. And we have accordingly heretofore held that the action of the Circuit Courts in such cases is subject to our revision. *Williams* v. *Nottawa*, 104 U. S. 209; *Barry* v. *Edmunds*, 116 U. S. 550; *Hartog* v. *Memory*, 116 U. S. 588; *Morris* v. *Gilmer*, 129 U. S. 315 ; *Deputron* v. *Young*, 134 U. S. 241 ; *Lehigh Mining &c. Co.* v. *Kelly*, 160 U. S. 327.

The question raised by this writ of error is whether the Circuit Court erred in dismissing the plaintiffs' suit for the alleged reason that the value of the property in dispute did not amount to the sum of two thousand dollars, exclusive of interest and costs, and that, therefore, such suit did not really and substantially involve a dispute or controversy prop-erly within the jurisdiction of said Circuit Court; and, as prescribed by the fifth section of the act of March 3, 1891,

such question of the jurisdiction of the Circuit Court alone is presented for our decision. *Shields* v. *Coleman*, 157 U. S. 168.

The question whether the land in dispute was of a value sufficient to give the Circuit Court jurisdiction was purely one of fact, and as that question was not submitted to the jury, but was passed on by the court upon affidavit, it is now suggested that, upon a writ of error, this court cannot consider the facts disclosed by the affidavits, but is restricted to any errors of law shown by the record.

Undoubtedly, the general rule is that, upon a writ of error, only matters of law appearing on the face of the record can be considered, and that evidence, whether written or oral, and whether given to the court or to the jury, does not become a part of the record unless made so by some regular proceeding at the time of the trial and before the rendition of the judgment. Whatever the error may be, and in whatever stage of the cause it may have occurred, it must appear in the record, else it cannot be revised in a court of error exercising jurisdiction according to the course of the common law ; and ordinarily a bill of exceptions lies only upon some point arising either upon the admission or rejection of evidence, or is a matter of law arising from a fact found, or not denied, and which has been overruled by the court. *Arthurs* v. *Hart*, 17 How. 6.

The difficulty arises out of the peculiar character of the legislation which we are now considering. Prior to the passage of the act of 1875 questions going to the jurisdiction of the court could only be raised by a plea in abatement in the nature of a plea to the jurisdiction. See *Farmington* v. *Pillsbury*, 114 U. S. 138, and cases there cited. If such a plea presented a question of law upon the face of the record, this court could review the decision of the court below upon such question of law. If the plea asserted matters of fact *dehors* the record, it was open for the parties to agree upon a statement of facts, or to take exceptions to the rulings of the court in admitting or rejecting evidence offered to the jury or in giving instructions, and in either event only questions of law would be presented for our decision.

But, under the act of 1875, the trial court is not bound by the pleadings of the parties, but may, of its own motion, if led to believe that its jurisdiction is not properly invoked, inquire into the facts as they really exist. *Williams* v. *Nottawa*, 104 U. S. 209; *Barry* v. *Edmunds*, 116 U. S. 550; *Morris* v. *Gilmer*, 129 U. S. 315; *Deputron* v. *Young*, 134 U. S. 241. And our present problem is to preserve as well the power of the trial court to make such inquiries as the right of suitors, so expressly reserved to them in the statutes, to have the action of the lower court reviewed by the Supreme Court of the United States.

In equity cases, which come up on appeal, and where the evidence on which the court below acted is presented here, the action of that court can be readily reviewed. But in cases at law, like the present one, how can we review the judgment of the court below, unless that judgment is either based on the verdict of a jury or upon facts found in an agreed statement?

The statute does not prescribe any particular mode in which the question of the jurisdiction is to be brought to the attention of the court, nor how such question, when raised, shall be determined.

When such a question arises in an action at law its decision would usually depend upon matters of fact, and also usually involves a denial of formal, but necessary, allegations contained in the plaintiff's declaration or complaint. Such a case would be presented when the plaintiff's allegation that the controversy was between citizens of different States, or when, as in the present case the allegation that the matter in dispute was of sufficient value to give the court jurisdiction, was denied.

In such cases, whether the question was raised by the defendant or by the court on its own motion, the court might doubtless order the issue to be tried by the jury. The action of the court, in the admission or rejection of evidence, or in instructing the jury, would thus be subjected to the review by this court which was intended by Congress.

Such was the course pursued in the case of *Jones* v. *League*,

18 How. 76. That was an action at law to try title to land. League, the plaintiff, averred himself to be a citizen of Mary-land, the defendants being citizens of Texas. By a plea in abatement the defendants alleged that, at the time of the commencement of the suit, League was a citizen of Texas. On this plea the plaintiff took issue, and a trial of that issue was had, which resulted, under the instructions of the court, in a verdict of the jury for the plaintiff. The case was brought up, by a writ of error, to this court, where the valid-ity of the instructions given by the trial court was considered.

A similar course was followed in the case of *Chicago & Northwestern Railway* v. *Ohle*, 117 U. S. 123. There, an action had been brought by Ohle in a state court of Iowa against the railway company, which took the case by a re-moval petition into the Circuit Court of the United States, on the ground that Ohle was a citizen of Iowa and the rail-way company a citizen of Illinois. Ohle was permitted by the Circuit Court to file a plea in abatement or to the juris-diction, alleging that both he and the railway company were citizens of Illinois. Upon this plea issue was joined, and a trial had with a jury ; and the cause was brought to this court by a writ of error, where the instructions of the court to the jury were reviewed and the judgment affirmed.

But the questions might arise in such a shape that the court might consider and determine them without the intervention of a jury. And it would appear to have been the intention of Congress to leave the mode of raising and trying such issues to the discretion of the trial judge.

But whether the judge shall elect to submit the issues to the jury, or to himself hear and determine them, it is the manifest meaning of this legislation that, in either event, the parties are not to be concluded by the judgment of the Cir-cuit Court. As we have already said, if the questions are submitted to the jury, there will be a ready remedy, by proper exceptions and a writ of error, to correct any errors into which the trial court may have fallen. And if the court takes to itself the determination of the disputed questions, it is imperative, in order to give effect to the intention of Con-

gress, that its action must take a form that will enable this court to review it, so far as to determine whether the conclusion of the court below was warranted by the evidence before that court.

Thus in *Barry* v. *Edmunds*, 116 U. S. 550, where the judgment of the Circuit Court, dismissing a cause because in its opinion the matter in dispute did not amount to the jurisdictional value, was reversed, it was said :

" In making such an order therefore the Circuit Court exercises a legal and not a personal discretion, which must be exerted in view of the facts sufficiently proven, and controlled by fixed rules of law. It might happen that the judge, on the trial or hearing of the cause, would receive impressions amounting to a moral certainty that it does not really and substantially involve a dispute or controversy within the jurisdiction of the court. But upon such a personal conviction, however strong, he would not be at liberty to act, unless the facts on which the persuasion is based, when made distinctly to appear on the record, create a legal certainty of the conclusion based on them. Nothing less than this is meant by the statute when it provides that the failure of its jurisdiction, on this account, 'shall appear to the satisfaction of said Circuit Court.' " In *Hartog* v. *Memory*, Ib. 588, it was said : " No doubt, if, from any source, the court is led to suspect that its jurisdiction has been imposed upon by the collusion of the parties or in any other way, it may at once of its own motion cause the necessary inquiry to be made, either by having the proper issue joined and tried, or by some other appropriate form of proceeding, and act as justice may require for its own protection against fraud or imposition. But the evidence on which the Circuit Court acts in dismissing the suit must be pertinent either to the issue made by the parties, or to the inquiry instituted by the court; and must appear of record if either party desires to invoke the appellate jurisdiction of this court for the review of the order of dismissal. And when the defendant has not so pleaded as to entitle him to object to the jurisdiction, and the objection is taken by the court of its own motion, justice requires that the plaintiff

should have an opportunity to be heard upon the motion, and to meet it by appropriate evidence."

And this language from *Barry* v. *Edmunds* was quoted with approval in the case of *Deputron* v. *Young*, 134 U. S. 252.

This court must, therefore, consider whether the judgment of the Circuit Court, dismissing the suit for want of jurisdiction, was warranted by the facts of the case as they are disclosed in the record.

The declaration was as follows:

"The plaintiff, George Peabody Wetmore, who is a citizen of the State of Rhode Island; Matilda C. Alloway, a citizen and resident of the State of Pennsylvania; V. K. Stevenson, Hugh Stevenson, Paul E. Stevenson, Eloise Stevenson Kernochan and James L. Kernochan, her husband, and Maxwell Stevenson, by Paul E. Stevenson, his next friend, all of whom are citizens and residents of the State of New York, sue the defendants, David Rymer, Sam. Rymer, Tom Payne and W. Calvin McConnell, all of whom are citizens and residents of Polk County, Tennessee, to recover the following-described lands, situate in the county of Polk, in the southern division of the eastern district of Tennessee, to wit:

"In town. one, range three east, of the basis line, Ocoee district.

"The south half of section one, the south half of section two, the northwest quarter of section eleven, all of section twelve, the southwest quarter of section thirteen.

"In town. two, range four east, of the basis line, Ocoee district.

"All of sections one and two and three and five and eight and nine and ten and eleven and twelve and thirteen and fourteen and fifteen and seventeen and twenty and twenty-one and twenty-two and twenty-three and twenty-four and twenty-five and twenty-six and twenty-seven and twenty-eight and thirty-three and thirty-four and thirty-five, the north half and the southeast quarter of section six; the east half of section seven, the east half of section eighteen, the east half and the northwest quarter of section nineteen, the

north half and the southeast quarter of section twenty-nine, the east half of section thirty-two, the west half of the west half of section thirty-six.

"In town. one, range four east, of the basis line, Ocoee district.

"All of section thirty-one and thirty-five and thirty-six, the west half of section thirty-four.

"As shown on the general plan of the Ocoee district of the State of Tennessee, to which and the grants for said land reference is made for full description.

"Which lands are worth more than two thousand dollars and of which lands said plaintiffs were possessed, claiming in fee, before the commencement of this suit, and after said possession accrued the said defendants, on the first day of January, 1892, entered thereupon and unlawfully withhold and detain the same, together with one thousand dollars due for the detention thereof."

The plea was as follows:

"And now comes the defendant, David Rymer, and for plea to plaintiffs' declaration says that he is not in possession of and does not claim and has not entered upon or been in possession of or claimed any part of the lands in said declaration described, except the following described lands, to wit: The southwest ¼ of section 17, the north ½ of section 20, the east ½ and southwest ¼ of section 18, and the northeast ¼ of section 19, all in township 2, range 4 east, of the basis line, Ocoee district, Tennessee; and as to all the lands except those herein described this defendant here and now disclaims any and all interest, right or title.

"And for further plea in this behalf said defendant says that as to the said southwest ¼ of section 17, the north ½ of section 20, the east ½ and southwest ¼ of section 18, and the northeast ¼ of section 19, all in township 2, range 4 east, of the basis line, Ocoee district, Polk County, Tennessee, he is not guilty in manner and form as the plaintiffs in their said declaration have alleged; and of this put himself upon the country."

The verdict and judgment were for all the lands claimed in

the declaration, being a connected body of land of about 25,000 acres. The plea claimed right of possession to between one and two thousand acres. The evidence upon which the court passed was restricted to the value of the land claimed by the defendants. And it is urged on behalf of the plaintiffs that the value of the entire tract claimed in the declaration and recovered by the verdict should have been considered in passing upon the question of the value of the matter in dispute; that, while the disclaimer may estop the defendants, it does not deprive the plaintiffs of their right to a verdict and judgment for the entire tract claimed, upon which a writ of possession may issue; that judgment in ejectment is conclusive as to title so far as the parties are concerned.

But we do not consider it necessary to consider or decide this contention, because we are of opinion that the evidence sufficiently disclosed, for the purposes of maintaining jurisdiction, that the value of the land claimed in the plea exceeded the sum of two thousand dollars. As that evidence is brief it seems proper to state it in the very form in which it appears in the bill of exceptions.

At the trial and before the jury rendered their verdict, the plaintiffs introduced as a witness one Oscar W. Muller, who testified that he was a surveyor and had surveyed the lands for the plaintiffs. On cross-examination by defendants' attorney he testified that the market value of the land was fifty cents per acre; that it was wild or mountain land, and not worth more than that unless its prospective value was to be considered, and that the land described in the plea of the defendants was not worth $1000.

After the verdict and judgment, and upon the motion made to dismiss, the plaintiffs filed the affidavit of Charles Seymour, who testified that he was the attorney and had been for twenty-five years the agent of what are known as the Wetmore and Stevenson lands, in Polk County, Tennessee, and that he is familiar with most of the lands and has been on the lands in dispute in this cause, and that the lands set out in the plea of the defendants lie on Lost Creek and Little Lost Creek, and form a connecting way to many thousands of acres of land of

the plaintiffs, which lie in that vicinity, and that the lands described in this plea are worth more than $2000 on account of their location, and are not to be judged by the general price for mountain land in the vicinity; that these lands lie near the foot of Frog Mountain, on the northwesterly side, where the timber is more than usually heavy and unusually valuable, both for accessibility and quality.

The plaintiffs likewise filed the affidavit of J. B. Brock, in which he testified as follows:

"I have lived in Polk County over forty years; was sheriff for six years, and have herded cattle for about twenty-five years on and in vicinity of lands set out in defendants' plea, and I know the location of some twenty thousand acres lying near by, understood to be the property of Wetmore and Stevenson heirs, the plaintiffs in this suit. The lands described in the plea are worth much more than the ordinary mountain lands. I sold a quarter section of 160 acres lying a mile from the lands in the plea for $400, and the lands described in the plea are near the foot of the mountain, where the timber is better than on most of the mountains; and the way they lie, if I owned the Wetmore and Stevenson lands, I would not want to sell at all, as they are part of a large boundary that would be needed for shelter of cattle off the mountain and for roadways, and control of the ways to the herding grounds or timber work, or if mining be done would be in the way. Not long before the defendant took the lease in 1888 from Wetmore and Stevenson he offered to make me a deed for some land a mile and a half from any land in his present plea in this suit."

The plaintiffs likewise filed the affidavit of O. W. Muller, who, having testified that he has been county surveyor for Polk County for a number of years, and has surveyed the lands in dispute, and also surrounding lands, said:

"While I value the mountain land as a whole at fifty cents per acre, the land in litigation, lying on the waters of Lost Creek and Little Lost Creek at the foot of the mountain, forms part of a connected body of land of about twenty-five thousand acres, and forms a gateway and outlet to this body

for timber and stock to the Hiwassee River and railroad, without which the rest of the body would be materially reduced in value, say from ten to twenty cents per acre. To cut this off and permanently block this approach would reduce the value of the whole from two to four thousand dollars."

The defendants filed no affidavits and adduced no evidence on the question of value, but appear to have relied wholly on the statements of O. W. Muller when under cross-examination at the trial.

It is not easy to see upon what sound view of this evidence the learned judge of the Circuit Court deprived the plaintiffs of their verdict and judgment. There was no pretence that the plaintiffs had fraudulently overstated the value of the land in order to confer jurisdiction.

It does not seem to have occurred to the defendants that the land which they claimed was not worth $2000, until, at the trial, their attorney caught at the statement of one of plaintiffs' witnesses that he estimated wild mountain land at fifty cents an acre. When the court gave leave to both parties to file affidavits showing the value of the lands in controversy, the defendants were unable or unwilling to make or procure to be made a single statement under oath on the subject of the inquiry. A liberal presumption ought, therefore, to be indulged in favor of the plaintiffs' evidence in that regard. It is well known that there is no matter in respect to which the judgments of men more widely differ than in regard to the value of real estate.

We give no weight to that portion of the plaintiffs' evidence that goes to show damage to the balance of their lands by an adverse occupancy of the land claimed by the defendants. But looking only at the evidence bearing strictly on the value of the controverted lands, it seems obvious that while the market value of the wild mountain land generally was estimated by one of the witnesses at fifty cents an acre, yet it was testified by several witnesses that these particular lands possessed a special value by reason of their location at the foot of the mountain, and because the timber on them was more than usually heavy and valuable both for accessibility

and quality. Charles Seymour, who had been familiar with the lands for twenty-five years as agent for their owner, testified that the lands described in the plea were worth more than $2000 on account of their location and the quality of their timber, and were not to be adjudged by the general price for mountain land in the vicinity.

It is unnecessary to quote authorities to show that, in estimating the market value of land, everything which gives it intrinsic value is a proper element for consideration; not only its present use but its capabilities are to be considered. Even unimproved land lying at the foot of a mountain range is obviously more valuable than similar lands less eligibly situated.

Applying the law as heretofore stated by this court, in the cases cited, that a suit cannot be properly dismissed by a Circuit Court as not substantially involving a controversy within its jurisdiction, unless the facts, when made to appear on the record, create a legal certainty of that conclusion, we conclude that, in the present case, the want of jurisdiction was not made clear, and that the evidence before that court did not warrant a dismissal of the action for the want of jurisdiction.

*The judgment of the Circuit Court dismissing the action is accordingly reversed, and the cause is remanded with directions to restore the judgment on the verdict.*