**Walter SEIDEMAN, Appellant,**

v.

**Anne HAMILTON.**

**No. 12979.**

United States Court of Appeals Third Circuit.

Argued Jan. 8, 1960.

Decided Feb. 17, 1960.

Marshall J. Seidman, Philadelphia, Pa. (B. Nathaniel Richter, Kenneth Syken, Richter, Lord & Levy, Philadelphia, Pa., on the brief), for appellant.

Harry F. Brennan, Philadelphia, Pa., for appellee.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

STALEY, Circuit Judge.

We are asked to determine whether the district court erred in refusing to submit the controverted question of diversity to a jury for determination, and, secondly, if this refusal was correct, did the court err in its conclusion that there was a lack of diversity.

The action arose as a result of injuries sustained by appellant, a citizen of

Pennsylvania, in an automobile collision with a car driven by appellee. Jurisdiction was based upon diversity, appellant contending that appellee was a citizen of Delaware at the time the suit was instituted. Appellee denied this assertion by her answer and by a motion to dismiss for lack of diversity jurisdiction, 28 U.S.C. § 1332(a) (1), alleging Pennsylvania citizenship. The district court ordered a hearing at which both parties were given an opportunity to present evidence. Upon the oral testimony produced at the hearing and the deposition of appellee, the district court found that appellee was a citizen of Pennsylvania when the action was initiated and thereupon dismissed the action.

The evidence as disclosed by the record indicates the following: Appellee was born in Philadelphia but moved with her parents to Newark, Delaware, in 1927. She lived in Delaware until 1941, when she matriculated at the University of Pennsylvania. Thenceforth she merely spent week ends with her parents in Newark. Upon completion of her academic studies, appellee accepted employment and established a residence in Pennsylvania. Eight years later she married a citizen of Pennsylvania, and they established a home in Philadelphia. In June of 1952 the couple moved to a home in Jenkintown, Pennsylvania, and she remained there following her husband's death in November, 1954. At some later date appellee purchased the home from her husband's estate. She testified that soon after her husband's death, real estate agents began harassing her to place the house up for sale and to avoid this constant annoyance but with no fixed idea of selling, she quoted an exorbitant price which she was certain could not be obtained. Appellee last voted in Pennsylvania in 1955 and attempted unsuccessfully to secure an absentee ballot in 1956 while vacationing abroad. Her name was removed from the voting lists in 1957 for failure to vote for two successive years.

Following her husband's death, appellee visited her parents in Newark, Delaware, around Christmas, 1955. Between that visit and March, 1956, she spent only three days there. Thereafter appellee traveled abroad until August, 1956.[1] In September of the same year she again traveled abroad. During the entire period of these sojourns, appellee maintained the residence in Jenkintown, employing a maid to supervise it. Prior to embarking on the second foreign trip, appellee left a key to the house with a real estate broker named Connor. Her purpose in doing so, she testified, was to enable Connor to look after the house in her absence. Subsequent to her return to the United States in January, 1957, appellee resumed occupancy of her home and sporadically visited her parents in Delaware, never staying more than one or two days. Although the property had never been listed with Connor for sale, in March, 1958, he approached her with an offer for the house which she accepted. She maintained that there had been no prior negotiations with Connor or any other broker other than the fixing of the price which, as has been noted, she considered to be exorbitant. On April 3, 1958, she surrendered possession of the Jenkintown house and moved to Maryland.

The accident upon which the instant action is founded occurred in October, 1955. At that time appellee possessed a Delaware driver's license upon which was listed the Delaware address of her parents. She testified that she obtained this permanent license soon after they were first authorized,[2] and it required neither renewal nor payment of an annual license fee. Although Delaware law provides that notice of change of address is required,[3] appellee denied knowledge of

---

1. It was during this period, on April 24, 1956, that suit in the instant case was filed.

2. Permanent licenses were first authorized by the State of Delaware in 1945. See 21 Del.Code Ann. § 2714.

3. 21 Del.Code Ann. § 320.

this requirement. In addition, appellee throughout her marriage and thereafter maintained an account in a Newark bank and received mail at the home of her parents. The bank account dated from the time she was eight years old, and although it lay dormant during her marriage, she resumed deposits after her husband's death. Appellee attributed the mail addressed to the Delaware address to the failure of many people to be aware of her marriage. Most importantly, appellee insisted that prior to March, 1958, she had no intention of living anywhere other than in Pennsylvania and planned to spend the rest of her life in Jenkintown.

Appellant seems not now to contend, as he evidently did in the district court, that there is an absolute right to trial by jury on all issues of fact involved in diversity where it is the basis of jurisdiction. He does maintain, however, that the determining factor in the case was the assessment of appellee's testimony concerning her domiciliary intentions following the death of her husband, and, since such appraisals have traditionally been left to the jury, it was error for the district court to fail to do so.

 Although appellant has cast his argument in different terms, on analysis it appears that his position has not really changed. The resolution of controverted factual issues evidenced by the testimony of witnesses always requires the appraisal of the witnesses' credibility, and thus would require the use of a jury in every such case. This is not the law, but rather it has been recognized that the trial court has a choice of modes for determination of the issues and may either decide them itself or refer them to a jury for resolution. The same issue was raised in Gilbert v. David, 1915, 235 U.S. 561, 568, 35 S.Ct. 164, 166, 59 L.Ed. 360, where diversity was also questioned:

"It is also insisted that the court erred in itself considering the *testimony*, and in not submitting the issue to the jury. But while the court might have submitted the question to the jury, it was not bound to do so; the parties having adduced their testimony, pro and con, it was the privilege of the court, if it saw fit, to dispose of the issue upon the testimony which was fully heard upon that subject. Wetmore v. Rymer, 169 U.S. 115 [18 S.Ct. 293, 42 L.Ed. 682]." (Emphasis supplied.)

The district court herein exercised that privilege, and its refusal to submit the issue of diversity to a jury cannot be challenged on appeal as an abuse of discretion. Guarantee Trust Co. v. Collings, 3 Cir., 76 F.2d 870, certiorari denied 1935, 295 U.S. 747, 55 S.Ct. 825, 79 L.Ed. 1692. See 5 Moore's Federal Practice ¶ 38.36 2d Ed., and cases cited therein.

 Appellant's second contention is equally without merit. On the basis of the undisputed testimony and the reasonable inferences that could be drawn therefrom, the district court concluded that the appellee was a citizen of Pennsylvania when the action was initiated and so dismissed the case. The most that can be said about the appellant's analysis of the evidence is that a court, if it disbelieved the appellee, might have come to a contrary result on the issue of intention and thus have found the appellee to have been a citizen of Delaware. That this conclusion was not compelled, however, is quite obvious from a review of the facts recited above. The trial court had an opportunity to hear the appellee testify and credited her testimony. It is not the province of an appellate court to reverse a trial court under such circumstances unless it is convinced that clear error has been committed. This is not such a case.

The judgment will be affirmed.