736 F.Supp. 614 (1990)
UNITED STATES ex rel. STINSON, LYONS, GERLIN & BUSTAMANTE, Plaintiff,
v.
The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.
Civ. A. No. 90-526.
United States District Court, D. New Jersey.
May 4, 1990.
*615 Tracy E. Tomlin, Stinson, Lyons, Gerlin & Bustamante, Miami, Fla., for plaintiff.
William G. Kopit, Epstein, Becker & Green, Washington, D.C. and Robert E. Turtz, Epstein, Becker & Green, Princeton, N.J., for defendant.

OPINION
WOLIN, District Judge.
Plaintiff, the law firm of Stinson, Lyons, Gerlin & Bustamante ("the law firm"), has commenced this suit under the qui tam[1] provisions of the False Claims Act, ("the FCA") 31 U.S.C. § 3730(b) et seq. The law firm seeks damages and civil penalties arising from alleged false statements and claims made by defendant, The Prudential Insurance Company of America ("Prudential") in violation of the FCA. Defendant has moved for dismissal of the complaint, or in the alternative, for summary judgment. For the following reasons, the Court will dismiss the complaint for lack of subject matter jurisdiction. See Fed.R. Civ.P. 12(b)(1).

I. BACKGROUND
Plaintiff is a private law firm seeking to act on behalf of the United States. The law firm alleges that Prudential, a provider of medical health insurance and group policies, defrauded the Government by shifting responsibility for the payment of insurance claims to Medicare[2] despite Prudential's knowledge and understanding of its obligations under section 116(a) of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"). TEFRA was the result of Congressional efforts to reduce federal spending; it amended the law to make Medicare the secondary payor to employer group health plan coverage for persons age 65 to 69 (the "working aged") who were employed at the time services were rendered.[3]
In its complaint, plaintiff alleges that Prudential engaged in a scheme to defraud the Government by allowing Medicare to pay as primary payor and by avoiding or decreasing its obligation to reimburse Medicare or its beneficiaries. Plaintiff learned of the alleged fraud during its representation of Mr. Armlon Leonard in a previous lawsuit. Bustamante Aff., Def. Exh. E., ¶ 8. In that lawsuit, Provident Life & Accident Insurance Company v. Leonard, No. 85-10113 CA(15) (Fla. Dade Co.Cir.Ct. March 1985) rev'd, 526 So.2d 721 (Fla.Dist.Ct.App.1988) (the "Leonard" litigation), plaintiff represented Leonard after he was in an automobile accident in 1983. During that representation, the law firm reviewed the health insurance policy Leonard had with carrier Provident Life & Accident Insurance Company ("Provident") and after further investigation, concluded that Provident's claims handling practices violated federal law by paying secondary to Medicare instead of primary. A lawsuit almost identical to this one ensued. See United States ex rel. Stinson v. Provident Life & Accident Ins. Co., 721 F.Supp. 1247 (S.D.Fla.1989) (the "Provident" litigation).
Through the discovery process in the Leonard litigation, plaintiff obtained internal memoranda from Provident. Bustamante Aff., Def.Exh. E., ¶ 8. One memorandum related to Provident's current method of processing claims for the working aged recommended changing the company's claims procedures to comply with new Medicare regulations. Pltf.Exh. I; Def.Exh. 6, 6A. A second document, entitled "Medicare Reimbursement," is allegedly *616 the tabulated results of a telephone survey Provident had conducted of other insurance carriers claims processing procedures. Pltf.Exh. J; Def.Exh. 6A. That document includes a list of the 24 carriers supposedly contacted by Provident; next to the names of 7 carriers are handwritten annotations. Prudential is one of the 7 carriers and next to the name Arthur M. Wood, Vice President, is written, "Left messageSame as us". With that document in its possession, plaintiff initiated this law suit against Prudential in March 1989.
Under the FCA, a qui tam suit must first be served on the United States, rather than a defendant. It is filed in camera and remains under seal for at least sixty days. 31 U.S.C. § 3730(b)(2) (Supp. V 1987). Within that sixty day period, the Government has the option to intervene and assume prosecution of the case. Id. If the Government chooses to intervene, it becomes the primary responsible party, although the qui tam plaintiff, the "relator," may continue as a party. 31 U.S.C. § 3730(c)(1) (Supp. V 1988). If the Government chooses not to intervene, the relator may proceed to seek recovery of damages and penalties. 31 U.S.C. §§ 3730(c)(3), (d)(2) (Supp. V 1988).
The law firm properly filed this suit with the Government which ultimately chose not to intervene. Pltf.Exh. C. As a result of the Government's declination, the law firm is given standing to sue provided it meets the jurisdictional requirements of the FCA.
Those jurisdictional requirements are at issue here, for Prudential seeks dismissal of the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, on the grounds that plaintiff does not qualify as a proper qui tam plaintiff under the express terms and intent of the FCA. See 31 U.S.C. § 3730(e)(4)(A), (B) (Supp. V 1988). Prudential has also moved for dismissal pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6), for failure to plead fraud with sufficient particularity and failure to state a claim upon which relief can be granted.

II. DISCUSSION

A. Standard of Review

The Court's procedure under a motion to dismiss for lack of subject matter jurisdiction is determined by whether the Fed.R.Civ.P. 12(b)(1) motion attacks the complaint on its face or attacks the existence of subject matter jurisdiction in fact. Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir.1977). A facial attack offers the familiar safeguards afforded to the plaintiff under a Fed.R. Civ.P. 12(b)(6) procedure: the court must consider the allegations of the complaint as true. Id. Conversely, a factual attack offers no safeguards. In that situation, because the Court's very power to hear the case is at issue, the Court may weigh the evidence. No presumption of truthfulness attaches to plaintiff's allegations and the existence of disputed material facts will not preclude the Court from evaluating for itself the merits of jurisdictional claims. While the form of inquiry is flexible, the burden of proof that jurisdiction does in fact exist remains with the plaintiff. See 5 C. Wright and A. Miller, Federal Practice and Procedure § 1350 (1969); see also, Gibbs v. Buck, 307 U.S. 66, 71-71, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939) (there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court); Wetmore v. Rymer, 169 U.S. 115, 18 S.Ct. 293, 42 L.Ed. 682 (1898) (the district court is free to determine facts relevant to its jurisdiction).
In the case at bar, plaintiff claims that Prudential is attacking the complaint on its face. Pltf.Mem., 4, 6. The Court finds this characterization disingenuous, particularly in light of the implicit disavowal contained in a subsequent paragraph, "[t]o the extent that this Court is compelled to evaluate defendant's factual challenge...." Pltf. Mem., 7 (emphasis added). A search through Prudential's submissions fails to reveal any allusion to the lack of jurisdiction evident on the face of the pleading. Rather, defendant has mounted a vigorous factual attack complete with numerous supporting exhibits. The argument Prudential *617 has placed squarely before the Court is that plaintiff is not the original source of the publicly disclosed information that forms the basis of this lawsuit, and therefore the Court lacks jurisdiction to hear this case under 31 U.S.C. 3730(e)(4)(B). Def.Mem., 7-10.

B. Jurisdiction

Both parties in this case have provided the Court with comprehensive descriptions of the history of the FCA, the interaction of the FCA with TEFRA (and DEFRA and COBRA[4]), and the legislative history and effect of the 1986 amendments to the FCA. Neither disputes the propriety of applying the 1986 amendments to this case and both acknowledge the general jurisdiction provision found at 31 U.S.C. § 3732(a)[5], and the jurisdictional exclusion found at 31 U.S.C. § 3730(e)(4)(A)[6]. As a threshold matter, the Court must ask if the plaintiff has demonstrated a sufficient basis for subject matter jurisdiction: whether (1) there has been a public disclosure within the meaning of the statute; (2) if so, whether the plaintiff/relator "based" this suit on the public disclosure; and (3) if so, whether the plaintiff/relator is an "original source of the information."

1. Public Disclosure

Under section 3730(e)(4)(A), a qui tam plaintiff may not bring an action based upon publicly disclosed allegations or transactions unless the plaintiff was an "original source" of the information. Prior to enactment, section 3730(e)(4)(A) contained a provision which permitted a qui tam plaintiff to bring an action based on publicly disclosed allegations and transactions if the government failed to act within six months of the disclosure. S.Rep. No. 99-345, 99th Cong., 2d Sess. 30, reprinted in 1986 U.S.Code Cong. & Admin.News ("USSCAN") 5266, 5295. This six month provision, however, was deleted from the final version of the bill. Thus, the FCA in its present form does not allow a qui tam plaintiff to bring an action based solely on publicly disclosed transactions.
Prudential argues that the law firm does not qualify as a proper qui tam plaintiff under subsection 3730(e)(4)(A), and that this action is barred because the law firm's claims derive from public disclosures of allegations and transactions in a prior unrelated civil lawsuit, the Leonard litigation. The two documents discovered in the Leonard litigation that allegedly reveal information about Prudential formed part of the law firms's basis for initiating the Provident litigation.
The law firm does not deny that it discovered those documents during the Leonard litigation. It maintains, however, that the plain language of subsection 3730(e)(4)(A) does not define public disclosure in a civil context as including allegations and transactions in civil "litigation" or "proceedings," but expressly precludes only claims based upon information disclosed at a civil "hearing." The legislative history, plaintiff contends, indicates that Congress amended the FCA to encourage an increased role for the qui tam plaintiff and specifically limited the source of information it considered to be "public disclosures."
*618 Prudential urges an expansive reading of the statutory language. It claims that the limitation suggested by plaintiff is inconsistent with legislative history since it would encourage the "parasitic" lawsuit prevalent in the 1940's that Congress intended to eliminate. Moreover, Prudential contends that the discovered Provident documents purported to refer to Prudential's claims processing procedures are, without more, insufficient to form the basis of a suit under the FCA. The notation by an unnamed Provident employee of a response to an unknown question allegedly addressed to, but denied by Prudential Vice President Wood, is hardly credible evidence of a fraud perpetrated upon the Government. See Def.Exh. 5, Wood Aff., ¶ 5.
The new FCA amendments enacted on October 27, 1986 have resulted in considerable judicial discussion. Although six courts have addressed the meaning of public disclosure in the context of a "civil hearing," none have faced the precise issue before this court. See Houck ex rel. United States v. Folding Carton Admin., 881 F.2d 494, 504 (7th Cir.1989); United States ex rel. LeBlanc v. Raytheon Co., 729 F.Supp. 170, 174-77 (D.Mass.1990) ("LeBlanc"); Provident, 721 F.Supp. 1247, 1256-57 (S.D.Fla.1989); United States ex rel. Dick v. Long Island Lighting Co., 710 F.Supp. 1485, 1486 (E.D.N.Y.1989) ("LILCO"); United States ex rel. LaValley v. First Nat. Bank of Boston, 707 F.Supp. 1351, 1366 (D.Mass.1988) ("LaValley"); United States ex rel. Houck v. Folding Carton Admin., No. 87-C-1253 (N.D.Ill. Jan. 20, 1988) (1988 WESTLAW 74829, * 7-9). Some courts assumed, with or without discussion, that the disclosure was public, see Provident and LaValley, others merely declared the information publicly disclosed, see LILCO and both Houck cases. The only court that frowned upon an expansive reading of the public disclosure provision of the FCA was the Southern District of Florida, by coincidence the very court that faced plaintiff's first law suit, and the transferor court of the current lawsuit.
Although the Provident court stated that "Congress was very specific in choosing the appropriate wording of the statute," it did not decide whether there had been a public disclosure because even if "some of the information which form[ed] the basis of th[e] suit was obtained during the course of discovery in the Leonard litigation, it was derived in an independent and direct manner, qualifying for the `original source' exception to the statute." 721 F.Supp. at 1257. This Court, unlike the Provident court, must determine whether information obtained solely through civil discovery constitutes public disclosure within the meaning of § 3730(e)(4)(A).
The law firm argues that because the public disclosure in this case did not occur within a civil hearing, it does not constitute "public disclosure" within the meaning of the FCA. Plaintiff's argument is based on the claim that the statutory phrase "public disclosure" is limited by the words and phrases that follow it. Accordingly, plaintiff argues that in a civil context the absence of a civil hearing negates the possibility of a public disclosure within the meaning of the statute.
Before proceeding to examine the statute and interpret its provisions, the Court must determine whether information produced during civil discovery constitutes public disclosure. The Court turns first to the Federal Rules of Civil Procedure for guidance. Rule 26(c)[7] presumes a degree of "publicness" to discovery materials. By requiring that a proponent of nondisclosure prove that good cause exists to limit public access to discovery material, the Rule implies that in the absence of good cause the material is open to the public. In Seattle Times Co. v. Rhinehart, the Supreme Court tacitly affirmed the statutory presumption. 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). The Court approved the trial court's finding that good cause had been *619 shown to require a protective order shielding certain information from public view. 467 U.S. at 37, 104 S.Ct. at 2209. Implicit in that analysis is the conclusion that in the absence of good cause, the information would have been available for public release.
The issue of release of discovered material has been addressed recently by the Third Circuit in several complex litigation cases. In Cipollone v. Liggett Group, Inc., 822 F.2d 335 (3d Cir.1987) the Court denied the petition for mandamus requested by the tobacco company and upheld the district court's order that allowed full use of discovered information in all related and similar cases. Similarly, in Smith v. BIC Corp., 869 F.2d 194 (3d Cir.1989), the Court affirmed that part of the district court's order which denied the motion for protective order with regard to discovery of information pertaining to similar accidents. By stating, "[w]e agree with the district court's analysis that BIC has failed to show how it would suffer serious harm and embarrassment as a result of the public disclosure of similar accidents or complaints," the Court implicitly acknowledged that discovered material not under protective order may be publicly disclosed. 869 F.2d at 201 (emphasis added).
A review of Rule 5(d) of the Federal Rules of Civil Procedure buttresses this view. Rule 5(d) requires that all discovery materials be filed with the court unless the court orders otherwise. This filing is required because "such materials are sometimes of interest to those who may have no access to them except by a requirement of filing, such as members of a class, litigants similarly situated, or the public generally." Fed.R.Civ.P. 5(d) advisory committee's note.[8] Federal district courts may adopt local rules that direct the parties not to file discovery materials except on order of the court. See, e.g., Rule 15(D) of the General Rules of the United States District Court for the District of New Jersey.[9] Thus, both Rule 26(c) and Rule 5(d) provide that discovery is presumptively open to public scrutiny unless a valid protective order directs otherwise.
Having determined that materials obtained during civil discovery are presumptively public absent a protective order, the Court must now consider whether such a public disclosure constitutes a "public disclosure of allegations or transactions in a criminal, civil or administrative hearing," as required by subsection 3730(e)(4)(A). The question before the Court is whether the general but ambiguous phrase, or term of art, "public disclosure" is statutorily limited by the specific words, "in a criminal, civil or administrative hearing." The law firm urges a restrictive view of the FCA statutory language. It claims that the clarity and precision of the language used demonstrates that Congress "did not intend for civil hearing to be equated with civil litigation." Pltf.Mem., 9. The general words, "civil hearing," taken by themselves, and literally construed without regard to the objective of the statute, would *620 seem to sanction the view of the plaintiff.[10] The Supreme Court, however, long ago stated,
... this mode of expounding a statute has never been adopted by any enlightened tribunalbecause it is evident that in many cases it would defeat the object which the Legislature intended to accomplish. And it is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute ... and the objects and policy of the law....
Brown v. Duchesne, 60 U.S. (19 How.) 183, 194, 15 L.Ed. 595 (1856) (quoted in Stafford v. Briggs, 444 U.S. 527, 535, 100 S.Ct. 774, 780, 63 L.Ed.2d 1 (1980)).
The Court, striving to become an enlightened tribunal, has looked to "the whole statute" and finds its provisions helpful in the following respects: inferences may be drawn from the absence of a definitional section in the statute, and from the almost duplicate language found in subsection 3730(d)(1). The absence of a definition for "civil hearing" may fairly imply that the phrase used is a common legal term of fairly definite meaning and that the legislature intends the common usage, i.e., some type of oral proceeding before a judge. Unless Congress intended to impart a different meaning to the term "civil hearing," a definition would be superfluous.
Assuming that "civil hearing" means exactly that and no more, the court's inquiry is next focused upon the particular use of the phrase in the statute in question. Subsection 3730(e)(4)(A) begins, "[n]o court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, ... or from the news media." That phrase is directly followed by, "unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A) (emphasis added) ("original source" is defined in 31 U.S.C. § 3730(e)(4)(B)). Subsection 3730(e)(4)(A) operates as a jurisdictional bar when information is publicly disclosed, in the specifically enumerated situations, except when an action is brought by the Attorney General or an "original source." Were the court to interpret the enumerated phrases as exclusive situations of public disclosure, the statute would then allow the court to exercise jurisdiction over all public disclosure outside that occurring in a civil hearing, without the "original source" limitation. Such a reading would provide the court with wide jurisdiction. If, on the other hand, the court read the enumerated phrases merely as examples to modify the phrase "public disclosure," the result would be an extended class, but one subject to inclusion in the court's jurisdictional sphere only if the disclosed information was provided by an "original source." This reading would result in more limited jurisdiction under the FCA.
The Court will adopt the latter reading because the result reached comports with the jurisdictional limitations of a federal court. Like all federal courts, this Court is a court of limited jurisdiction, jurisdiction subject both to constitutional and statutory definition. The limitations on federal jurisdiction require courts to avoid unexplicated revision of jurisdictional doctrine, thus, "jurisdictional statutes are to be construed `with precision and with fidelity to the terms by which Congress has expressed its wishes.'" Palmore v. United States, 411 U.S. 389, 396, 93 S.Ct. 1670, 1675, 36 L.Ed.2d 342 (1973) (citations omitted). Although the plain meaning of a statute controls its construction, "plain meaning, like beauty, is sometimes in the eye of the beholder." Florida Power & Light Co. v. Lorion, 470 U.S. 729, 737, 105 S.Ct. 1598, 1603, 84 L.Ed.2d 643 (1985). In this case, the plain meaning of the statute is not obvious and the ambiguous language *621 must be interpreted in light of the statutory structure, legislative history and congressional purposes. See id. After careful consideration of the above precepts, the Court finds it reasonable to read "public disclosure" as a general phrase not specifically limited by the enumerated examples in the remainder of the statute, and thus, it easily encompasses allegations such as those at issue in this case, public disclosures during civil discovery. Further support for the Court's view is found by a close reading of other parts of the FCA.
The FCA presents a two-tiered approach to qui tam awards: In situations where the Government has chosen to proceed with the action, the qui tam plaintiff is allowed "at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim" except in cases where
the court finds [the action] to be based primarily on disclosures of specific information (other than information provided by the person bringing the action) relating to allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative or Government Accounting Office report, hearing, audit, or investigation, or from the news media, [then,] the court may award such sums as it considers appropriate, but in no case more than 10 per cent of the proceeds....
31 U.S.C. § 3730(d)(1) (emphasis added). In situations where the Government chooses not to proceed with the FCA action, the qui tam plaintiff shall receive "not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement." 31 U.S.C. § 3730(d)(2).
The highlighted language, although strikingly similar to the jurisdictional clause at issue, contains two significant differences. First, the word "disclosure" is not qualified by the word "public," as it is in the jurisdictional provision. Second, in the award provision, any "disclosures" that form the basis of the action are evaluated by whether they "relate" to any allegations or transactions, not by whether they are "disclosures of allegations or transactions," as provided in the jurisdiction provision. Reading the two subsections together the Court can reach only one conclusion: it would be illogical to infer that Congress expanded the Court's jurisdiction to encourage citizen assistance in the enforcement of federal statutory schemes (§ 3730(e)(4)(A)), only to limit the incentive for bringing such suits by reducing the potential awards (§ 3730(d)(1)).
The Court's analysis, however, does not end with the language of the statute; the Court must also look to "the objects and policy of the law." Brown, 60 U.S. (19 How.) at 194. A thorough reading of the legislative history reveals that the 1986 amendments were a Congressional effort to prevent "opportunistic lawsuits while at the same time encouraging the disclosure of information otherwise unavailable to the government." LeBlanc, 729 F.Supp. 170, 176 (D.Mass.1990); see also 132 Cong.Rec. S11244 (daily ed. Aug. 11, 1986) (statement of Sen. Grassley). Throughout Senate Report No. 99-345, reprinted in, 1986 USSCAN 5266, the message is clear: the Government is in dire need of information to enhance its ability to recover losses sustained as a result of fraud against it.[11] The FCA is seen as the Government's primary litigative tool for combatting fraud, and the amendments were proposed "not only to provide the Government's law enforcers with more effective tools, but also *622 to encourage any individual knowing of Government fraud to bring that information forward." S.Rep. at 2, 1986 USSCAN at 5266 (emphasis added). Concurrently, the amendments were proposed to prevent any "windfalls" for persons who may not have had direct involvement with investigating or exposing alleged false claims. S.Rep. at 16, 1986 USSCAN at 5281. In view of the clarity of the message sent by Congress in proposing and enacting the 1986 amendments to the FCA, the Court finds it consistent with Congressional intent to interpret the language of § 3730(e)(4)(A) to include transactions and allegations publicly disclosed in a civil discovery proceeding.
The Court's conclusion is also supported by the current variation in local court filing procedures. Some district courts require the filing of all discovered documents, some do not. Since court records are open to the public, and publicly disclosed within the meaning of the FCA, it would be absurd for jurisdiction under the FCA to be determined by the size of a particular district's storeroom. Cf. Houck, 881 F.2d 494 (7th Cir.1989) ("the information upon which Houck based his complaint was publicly disclosed in Folding Carton I, 744 F.2d 1252 (7th Cir.1984)"; the information referred to by the Seventh Circuit was contained in motions filed in the district court, see Folding Carton I, 744 F.2d at 1254). The Court is satisfied that the information the law firm received from Provident during the Leonard litigation constitutes a public disclosure within the meaning of the FCA.

2. Based on the Leonard Litigation

Defendant declares that the law firm has no information concerning Prudential claims processing policies other than that procured during the Leonard litigation and that provided by Prudential to plaintiff in response to discovery requests. Plaintiff's failure to refute this assertion in its court submissions or at oral argument leaves the Court with no choice other than to consider the point conceded. See Pltf. Exh. I, J.

3. Original Source

Prudential contends that the law firm is not an original source of information upon which this action is based since the law firm did not have direct and independent knowledge of Prudential's alleged fraudulent practices. Section 3730(e)(4)(B) provides:
For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.
The law firm argues that even though the information that forms the basis for this suit was obtained during the course of discovery in the Leonard litigation, it was derived in an independent and direct manner, qualifying for the "original source" exception. The Court disagrees.
In this case, the information obtained by the law firm cannot be characterized as direct. This information was supposedly obtained by a Provident employee and then furnished to the law firm during discovery. In the discovery process, the law firm was not seeking information concerning Prudential's claim processing procedures, it merely "stumbled" across a seemingly incriminating notation. The law firm's interest, at the time of discovery, was limited to Provident's claims' procedures; its chance discovery of Prudential information is tantamount to having wandered into a courtroom during a Prudential proceeding. The Court finds that the law firm's knowledge of the pertinent information was gained merely by the fact that it was publicly disclosed, not by virtue of any direct relationship to, or interest in Prudential's claims' procedure.
The case at bar is very different from the law firm's first insurance suit in Provident. There, the information obtained by the law firm was independent and direct. It was produced through correspondence between one of the lawyers and Robert A. Streimer, Acting Director of the Health Care Financing Administration's Bureau of *623 Eligibility, Reimbursement and Coverage and as a result of a search by one of the lawyers for other complaints filed with the Indiana Insurance Department. The record before the Court is bare of correspondence and investigation. Information fortuitously discovered during unrelated litigation forms the sole basis for this qui tam action.
Nor, can plaintiff's knowledge of the information upon which this claim is based be characterized as independent, or flowing from a "source" independent of the public disclosure. There is nothing in the record to indicate that plaintiff would have learned anything about Prudential, but for the Provident disclosure. In sum, the Court finds that it lacks jurisdiction over plaintiff's qui tam action because the information upon which plaintiff's claim is based was publicly disclosed during the course of civil litigation and the plaintiff is not an "original source" of that information.

III. CONCLUSION
For the reasons set forth above, the Court will grant defendant's motion and will dismiss plaintiff's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.
NOTES
[1] The abbreviated phrase qui tam stands for "qui tam pro domino rege, etc., quam pro se ipso in hac parte sequitur," which translates to "Who prosecutes this suit as well for the king, etc., as for himself." 3 W. Blackstone, Commentaries on the Law of England 160, 162 & n. 41 (W. Lewis ed. 1898); see also, Jacklovich v. Interlake, Inc., 458 F.2d 923, 923 n. 1 (7th Cir.1972). Qui tam plaintiffs are often referred to as "informers" or "relators."
[2] See Title XVIII of the Social Security Act, 79 Stat. 291, as amended, 42 U.S.C. § 1395 et seq. (1982), commonly known as the Medicare Act.
[3] This provision, applicable to group health plans of employers of twenty or more, entitles employees and their spouses age 65 to 69 to the same health coverage under the same conditions as any employee under age 65; group health plans are now primary carriers for employees aged 65 to 69.
[4] Acronyms DEFRA and COBRA represent the Deficit Reduction Act of 1984 ("DEFRA"), Pub.L. No. 98-369, 98 Stat. 494 and the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), Pub.L. No. 99-272, 100 Stat. 82.
[5] Section 3732 provides in relevant part:

(a) Actions under section 3730.Any action under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred.
[6] Section 3730(e)(4)(A) provides:

No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
[7] Rule 26(c) provides, in part:

Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court ... may make any order ... to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense....
[8] The advisory committee's note to Rule 5(d) of the preliminary draft of proposed amendments to the Federal Rules of Civil Procedure, reads,

The rules now require the immediate filing of discovery materials. The cost of ... additional copies ... [for] filing can be considerable, and the volume of discovery materials now being filed presents serious problems of storage in the clerk's office in some districts. This amendment ... permit[s] the materials described to be retained by the parties unless and until they are used for some purpose in the action. But any party may request that designated materials be filed, and the court may require filing on its own motion ... at the request of a person who is not a party who desires access to public records, subject to the provisions of Rule 26(c).
77 F.R.D. 613, 622-23 (1978).
[9] Rule 15(D) provides:

1. Depositions upon oral examinations and interrogatories, requests for documents, requests for admission and answers and responses thereto are not to be filed except where needed in a particular proceeding or upon order of the Court. However, all such papers must be served on other counsel or parties entitled thereto under Rule 5 of the Civil Rules.
2. In those instances when such discovery materials are properly filed, the Clerk shall place them in the open case file unless otherwise ordered.
[10] Hearing, "[t]he listening to evidence and pleadings in a court of law; the trial of a cause." I The Compact Edition of the Oxford English Dictionary 1274 (1971); see also, "[p]roceeding of relative formality (though generally less formal than a trial), generally public...." Black's Law Dictionary 649 (5th ed. 1979).
[11] In countless ways governments seek citizen assistance to fight injustice and crime. One statutory method, deeply ingrained in history, is the qui tam provision by which those with helpful or incriminating information are encouraged to come forward in return for a share of recovered bounty. See generally, Caminker, The Constitutionality of QUI TAM Actions, 99 Yale L.J. 341, 342-44 (1989). At least four other federal qui tam laws are now in force in addition to the FCA: 18 U.S.C. § 962 (1988) (forfeitures of vessels privately armed against friendly nations); 25 U.S.C. § 201 (1988) (recovery of penalties for violation of Indian protection laws); 35 U.S.C. § 292 (1982) (penalties for patent infringement); and 46 U.S.C.App. § 723 (1982) (forfeiture of vessels taking undersea treasure from the Florida coast to foreign nations). None of these qui tam laws contain jurisdiction provisions similar to those in this case.