TACHA, Chief Circuit Judge.
Appellant Mary L. Holmes filed this action against Consumer Insurance Group under the qui tam provision of the False Claims Act, 31 U.S.C. § 3730. The United States moved to dismiss Holmes from the suit under Federal Rule of Civil Procedure 12(b)(1). The district court granted the motion and entered judgment against Holmes pursuant to Federal Rule of Civil Procedure 54(b). Holmes appealed. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

I. Background

Mary L. Holmes is postmaster at the United States Post Office in Poncha *1247 Springs, Colorado. In October of 1995, Holmes responded to an inquiry by employees of Consumer Insurance Group (“CIG”) about a bulk mailing. The CIG employees informed Holmes that CIG was receiving the per pound bulk postal rate at the post office in Howard, Colorado. After confirming this information with the postmaster in Howard, Holmes granted CIG’s request for the per pound rate. Upon further investigation, however, Holmes determined that CIG did not qualify for the rate, because the pieces in its mailings did not satisfy minimum weight requirements. Holmes therefore informed CIG that it could not take advantage of the per pound rate. She also informed the postmaster in Howard that CIG was not entitled to this rate.
Almost two years later, in August of 1997, Holmes was at the Howard post office to provide postmaster training. At that time, she asked the current postmaster whether CIG was receiving the per pound bulk rate, and she learned that it was. Holmes informed her superior and, later, the Office of the Inspector General and a postal systems coordinator (an auditor) that CIG was defrauding the Postal Service by providing false information in order to obtain a lower postal rate. The Postal Inspection Service initiated an investigation and later turned the case over to the U.S. Attorney. The government’s investigation of CIG included interviews with one current and two former CIG employees. In those interviews, the government revealed its suspicions, although it later became clear that the interviewees were already aware of the fraud. In August 1998, the Postal Service commended Holmes’s efforts with a letter of appreciation and a $500 award.
On April 2, 1999, Holmes filed suit against CIG under the False Claims Act (“FCA”). The FCA authorizes a person to bring a civil action, called a qui tarn action, against those who defraud the government. 31 U.S.C. § 3730(b). A qui tarn plaintiff, or relator, brings the action in the name of the government, and the government may elect to intervene. Id. § 3730(b)(l)-(2). The relator is entitled to a portion of the proceeds recovered in the action or settlement. Id. § 3730(d).
Following Holmes’s initiation of this case against CIG, the government moved to dismiss her for lack of subject matter jurisdiction. The government asserted that its disclosure of the fraud allegations to three current and former CIG employees during its investigation constituted “public disclosure.”[1] The government further argued that Holmes was not an “original source” and therefore could not avoid the public disclosure bar.[2] The district court granted the motion, but it did so without employing the public disclosure analysis. Instead, the district court concluded that the government’s ongoing investigation of the fraud allegations precluded Holmes’s suit. The district court *1248 therefore dismissed Holmes from the suit. Holmes appealed.

II. Discussion

Holmes argues that the district court improperly dismissed her from the suit, because an ongoing investigation does not bar a qui tam action, and because there had been no public disclosure of the allegations or transactions at issue. We hold that the district court erred in reasoning that the government’s ongoing investigation of the fraud allegations precludes Holmes’s suit, but that its dismissal of Holmes from the case was nevertheless correct.
In our prior cases dealing with qui tam actions by current or former federal employees, the public disclosure bar precluded the action. As a result, we have not previously defined the extent to which government employees may or may not qualify as qui tam plaintiffs when the public disclosure bar does not apply. United States ex rel. Fine v. MK-Ferguson Co., 99 F.3d 1538, 1541 n. 1 (10th Cir.1996); United States ex rel. Fine v. Advanced Sciences, Inc., 99 F.3d 1000, 1003 n. 1 (10th Cir.1996). We have held that “public disclosure occurs only when the allegations or fraudulent transactions are affirmatively provided to others not previously informed thereof.” United States ex. rel. Ramseyer v. Century Healthcare Corp., 90 F.3d 1514, 1521 (10th Cir.1996). It is undisputed that the current and former employees whom the government interviewed in its investigation of CIG had prior knowledge of the fraud. The government’s disclosure of information to them was therefore not “public” within the meaning of the FCA. As a result, we cannot rely on the public disclosure bar here and must squarely address the question of federal employees’ eligibility to file qui tam suits under the FCA. Based on our examination of the statute and its purposes and federal employees’ obligations to avoid conflicts of interest, we hold that Holmes was not a proper qui tam plaintiff. A person who, pursuant to duties as a government employee, is part of an ongoing government investigation of fraud allegations may not pursue a qui tam suit based on those allegations.
The First and Eleventh Circuits have split on this question, with the First Circuit finding no jurisdiction and the Eleventh Circuit reaching the opposite result. United States ex rel. Williams v. NEC Corp., 931 F.2d 1493, 1496 n. 7, 1502 (11th Cir.1991); United States ex rel. LeBlanc v. Raytheon Co., 913 F.2d 17, 20 (1st Cir.1990). Our approach differs from that of each of these circuits, and we discuss the significant differences below.[3]

A. Standard of Review

The district court treated the motion to dismiss for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), as a motion to dismiss under Rule 12(b)(6). This is appropriate when the jurisdictional issue arises from the statute that creates the cause of action. Ramseyer, 90 F.3d at 1518. Because the court relied on affidavits and other evidence, however, the motion should have been treated as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), and we therefore consider the motion on review as one for summary judgment. Id.
*1249 We review de novo an order of summary judgment, applying the same standard as the district court must apply under Rule 56(c). Wolf v. Prudential Ins. Co. of Am., 50 F.3d 793, 796 (10th Cir.1995). Accordingly, we consider whether, viewing the facts in the light most favorable to the nonmoving party, there is any issue of material fact that, if resolved in Holmes’s favor, would allow her to prevail. Id.
We also review de novo an issue of subject matter jurisdiction. United States ex rel. Precision Co. v. Koch Indus., 971 F.2d 548, 551 (10th Cir.1992). Federal courts have limited jurisdiction, and we therefore presume that there is no jurisdiction unless the party invoking it makes an adequate showing that it exists. Id. at 551. The party seeking to invoke federal jurisdiction bears the burden of alleging and proving by a preponderance of the evidence the facts necessary to support jurisdiction. Id.

B. The Ongoing Investigation

The district court reasoned that the government’s ongoing investigation demonstrated that the government was capable of pursuing the allegations without the assistance of the relator. The court therefore held that allowing a qui tam suit would not serve the purposes of the FCA and dismissed Holmes from the suit. Our examination of the FCA, its 1986 amendments, and Tenth Circuit case law leads us to conclude that an ongoing government investigation is not a per se bar to a qui tam suit.
Prior to 1986, the FCA required a court to dismiss an action that was based on information the government possessed when the action was brought, unless the government elected to proceed with the action. 31 U.S.C. § 3730(b)(4) (superced-ed). The Act further provided that, if the government elected to proceed with an action, the person initiating the action “may receive an amount the court decides is reasonable for disclosing evidence or information the Government did not have when the action was brought.” Id. § 3730(c)(1) (superceded). A qui tam relator, in other words, could only recover a portion of the proceeds due to the government if the relator had provided new information.
In 1986, Congress amended the qui tam provisions. The current version of the statute does not require that the relator provide information that the government does not already possess. Instead, Congress has provided that there is no jurisdiction over a relator’s suit that is “based upon the public disclosure of allegations or transactions ... in a congressional, administrative, or Government Accounting Office report, hearing audit, or investigation ... unless the person bringing the action is an original source of the information.” 31 U.S.C § 3730(e)(4)(A). This jurisdictional inquiry requires us to answer four questions: (1) Are the allegations or transactions contained in one of the listed sources? (2) Have the allegations or transactions been “publicly disclosed”? (3) Is the suit “based upon” the public disclosure? (4) If the answer to the first three questions is affirmative, can the relator qualify as an “original source” and therefore escape the jurisdictional bar? MK-Ferguson Co., 99 F.3d at 1544. A negative answer to any of the first three questions means that the qui tam action may proceed. The last question is only asked if the first three questions are all answered affirmatively.
The fact that a government investigation contains the allegations in Holmes’s complaint means that the answer to the question in step (1) is “yes.” This does not, however, end the inquiry. To hold that an ongoing investigation alone is a per se jurisdictional bar would ignore the four- *1250 step approach created in MK-Ferguson and would eviscerate the public disclosure bar’s remaining three steps, which are firmly grounded in the statutory language. Moreover, “[n]ot requiring some positive act of disclosure would reinstate the pre 1986 jurisdictional bar based on mere ‘government knowledge’ of information pertaining to fraud.” United States ex rel. Fine v. MK-Ferguson Co., 861 F.Supp. 1544, 1551 (D.N.M.1994), aff'd, 99 F.3d 1538 (10th Cir.1996), quoted with approval in Ramseyer, 90 F.3d at 1520.
We also find unpersuasive the district court’s reliance on our reference in a prior case to “Congress’ ‘twin goals of rejecting suits which the government is capable of pursuing itself, while promoting those which the government is not equipped to bring on its own.’ ” United States ex rel. Fine v. Sandia Corp., 70 F.3d 568, 571 (10th Cir.1995) (quoting United States ex rel. Springfield Terminal Ry. v. Quinn, 14 F.3d 645, 651 (D.C.Cir.1994)). In that case, these goals of the FCA informed our interpretation of “the public disclosure of allegations or transactions” and when a qui tam action is “based upon” that disclosure. Id. at 571-72. We decline to extend Sandia’s rationale, which we used as an aid to understanding specific statutory phrases, to reach a result that contradicts the plain meaning of the public disclosure bar and the purposes it evidences.
We therefore conclude that the district court erred in concluding that an ongoing government investigation bars a qui tam action. We normally would proceed under MK-Ferguson to answer the remaining three questions and, because there has been no public disclosure, we would find jurisdiction. For the reasons below, however, we hold that the specific circumstances of this case — where a government employee pursues a qui tam action during an ongoing investigation — gives rise to a different inquiry.

C. Examination of the Specific Circumstances

We may affirm the district court’s decision “on any ground adequately supported by the record.” Z.J. Gifts D-2, L.L.C. v. City of Aurora, 136 F.3d 683, 685 (10th Cir.1998). We therefore consider whether the specific circumstances in this case preclude jurisdiction over Holmes’s claim.
As an initial matter, we note that the FCA does not, by its terms, either authorize or preclude all suits by government employees.[4] One of the specific exclusions prevents suits “by a former or present member of the armed forces ... against a member of the armed forces arising out of such person’s service in the armed forces.” 31 U.S.C. § 3730(e)(1).[5] Another exclusion precludes a qui tam suit “against a Mem *1251 ber of Congress, a member of the judiciary, or a senior executive branch official if the action is based on evidence or information known to the Government when the action was brought.” Id. § 3730(e)(2)(A). In effect, this section might preclude government employees from filing qui tam suits against individuals in the named categories, based on the argument that, if a government employee has the information, the government also has it. If government employees were always precluded from pursuing qui tam suits under the FCA, these specific exclusions would be superfluous. We therefore avoid such an interpretation. N.M. Cattle Growers Ass’n v. U.S. Fish & Wildlife Serv., 248 F.3d 1277, 1285 (10th Cir.2001).
Although we decline to apply a general jurisdictional bar to federal employees, this conclusion does not necessarily mean that federal employees are always proper qui tam plaintiffs unless section 3730(e) bars jurisdiction. We therefore consider whether a federal employee who is part of an ongoing government investigation may proceed with a qui tam suit based on those allegations. We conclude that a federal employee may not proceed with a qui tam suit in these circumstances.
The FCA provides, in a section headed “Actions by private persons,” that “[a] person may bring a civil action for a violation of section 3729 for the person and for the United States Government.” 31 U.S.C. § 3730(b)(1). The Act does not make explicit the class of “persons” eligible to file civil suits under subsection (b). In construing a statute, “our overriding purpose is to determine congressional intent.” Chickasaw Nation v. United States, 208 F.3d, 871, 878 (10th Cir.2000) (citing Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 570, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). To determine the statute’s plain meaning, we “must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.” Id. (quoting K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988)). Based on our examination of the FCA and its purposes, along with our consideration of federal employees’ obligations to avoid conflicts of interest, we conclude that a federal employee who participates in a government investigation pursuant to her job duties is not, as least while the investigation is ongoing, a “person” entitled to bring a civil action under section 3730(b).
We acknowledge that, in reaching this conclusion, we take a position that conflicts directly with the Eleventh Circuit’s view. That court has held that a former government employee is not barred from pursuing a qui tam action based upon information he acquired during the course of his government employment, regardless of whether the government is engaged in an active investigation, of the alleged fraud. United States ex rel. Williams v. NEC Corp., 931 F.2d 1493, 1496 n. 7, 1502 (11th Cir.1991). Our approach is quite different from that of the Williams court. The Eleventh Circuit focused its analysis on the public disclosure bar, id. at 1499-1500, and extra-statutory arguments against jurisdiction, id. at 1501-04. In contrast, we *1252 start with the FCA’s initial grant of jurisdiction and conclude that not all government employees fall within the group of “persons” otherwise eligible to file a qui tam action. Much of the Eleventh Circuit’s reasoning addresses the FCA’s failure to preclude all government employees’ qui tam actions. It is our view, however, that while the Act does not explicitly authorize or preclude all such actions, it may allow some and disallow others. In determining which government employees are excluded from the category of eligible plaintiffs, we consider the employee’s duties and whether there is an ongoing government investigation. We conclude that allowing a qui tam action to proceed where the relator is a government employee acting as part of an ongoing investigation[6] would destroy the statute’s distinction between the government and relator, would contravene the purpose of the FCA, and would create impermissible conflicts of interest for federal employees pursuing such suits.

1. The Separation Between the Government and a Potential Relator

We first observe that the concept of a qui tam action assumes a distinction between the government and the individual qui tam plaintiff. When the FCA permits a private suit, the person filing it brings the action “for the person and for the United States Government.” 31 U.S.C. § 3730(b)(1). The term “qui tam” derives from the Latin phrase, “qui tam pro domino rege quam pro se ipso in hac parte sequitur,” which means “who as well for the king as for himself sues in this matter.” Black’s Law Dictionary 1262 (7th ed.1999). This distinction between relator and government is not present, however, when a federal employee obtains information about fraud in the pursuit of his or her particular duties as a government employee. In effect, that person obtains the information as the government. At least with respect to an ongoing government investigation, a federal employee who is involved in the investigation pursuant to employment duties is the government. Therefore, we hold that such an employee cannot file an action under section 3730(b) “for the person and for the United States Government.”[7]
Holmes is such an employee in this case. Holmes first encountered the CIG employees in her capacity as postmaster at the *1253 post office in Poncha Springs, Colorado. To determine whether CIG was entitled to the bulk rate it sought, she consulted with the postmaster at Howard, where CIG was supposedly receiving that rate. Though the Howard postmaster confirmed that CIG got the bulk rate, Holmes ultimately denied CIG that rate, based on her determination that the mailing did not meet weight requirements. It is undisputed that, at all times during this progression of events, Holmes acted in her capacity as postmaster.
Several years later, Holmes went to the Howard post office to provide training to the acting postmaster. It is undisputed that Holmes undertook this task within the scope of her employment as a postmaster. Holmes states in her affidavit that she provided this training with the approval of her manager, and her complaint states that she was “assigned temporarily to the Howard post office.” She makes no claim that the training itself was outside the scope of her employment. The affidavit of Marsha Boyle, a labor relations specialist who serves as a representative and advisor to the U.S. Postal Service, states that, under Postal Service regulations, “postmasters may be designated and certified as postmaster trainers.”
Holmes states in her affidavit that, during lunch with the acting postmaster when she was in Howard to provide training, she asked about CIG’s bulk rate and learned that it was getting the rate she had denied it two years earlier. She and the acting postmaster discussed the matter and together examined CIG’s latest mailing statement. Holmes claims that she had “no other business than curiosity to inquire about” the rates CIG was getting at the Howard post office, and that she had no authority over the Howard office and had not been assigned to check into bulk mailings. Even if she had no specific duty to inquire ask about CIG’s rates, however, she made the inquiry and obtained the relevant information in her capacity as postmaster.
Moreover, Holmes had a duty as a postmaster to report information about this type of fraud. Regulation 224.3 in the Postal Service’s Administrative Support Manual requires a postmaster to report by memorandum “[f]ailure to pay postage, violation of franking privilege, misuse of penalty mail, depositing of advertising material in mailboxes without payment of postage, and similar schemes to evade payment of postage.” (Emphasis added). Holmes does not dispute that this regulation applies to her. Nothing in the regulation limits its scope, and Holmes has provided no evidence to suggest that its scope is limited to fraud conducted or discovered at her home post office.[8] In fact, she concedes its applicability when she states in her brief that she “could have met her job description responsibility to report suspected fraud by simply sending a memorandum to the Postal Inspection Service.”
Holmes argues that she did more than what was required of her. We are not persuaded. According to her affidavit, Holmes first reported the fraud to her superior after her trip to Howard in August 1997, rather than immediately submitting a written memorandum to her local postal inspector in charge, as the postal *1254 regulations require. In December 1997, she had not yet heard anything about an investigation by the postal inspectors. She therefore sent a letter to the Inspector General’s office. In early March 1998, the Inspector General’s office notified Holmes by letter that it had “reviewed the information” and “referred [her] concerns to the appropriate Office of Inspector General Director for action deemed warranted.” Holmes had “little confidence that anything would be done,” and she therefore told a postal systems coordinator about the fraud allegations. Soon after, however, an agent from the Inspector General’s office contacted Holmes about its investigation. This course of events, as described by Holmes, demonstrates that, while she certainly reported the information, she did not follow the procedure outlined in the postal regulations. Moreover, it is undisputed that, when it became aware of the fraud allegations, the Postal Inspection Service investigated them. Thus, we cannot find that Holmes’s actions so exceeded her duties as to entitle her to pursue a qui tam action.
Inasmuch as Holmes’s duties as a federal employee are an important element in our analysis, our reasoning bears some similarity to the First Circuit’s reasoning in United States ex rel. LeBlanc v. Raytheon Co., 913 F.2d 17, 20 (1st Cir.1990). We emphasize, however, that our approach differs significantly from the First Circuit’s. The LeBlanc court held that a government employee who has a duty, as “a condition of his employment, to uncover fraud” does not qualify as a qui tam relator, because this duty prevents him from qualifying as an “original source.” Id. at 20. In contrast, we find it unnecessary to reach the original source question where there has been no public disclosure.[9] Instead, our analysis revolves around the meaning of Congress’s statement that “[a] *1255 person may bring a civil action ... for the person and for the United States Government,” 31 U.S.C. § 3730(b)(1), an issue that logically precedes the public disclosure and original source inquiries. A federal employee who is not precluded for the reasons we outline in this opinion would still be subject to the public disclosure bar, and if public disclosure had occurred, there would be no jurisdiction unless the employee could qualify as an original source.

2. The Purposes of the FCA and the 1986 Amendments

The purposes of the FCA’s qui tarn provisions and its 1986 amendments further support our conclusion that jurisdiction is lacking. “Congress instituted the qui tarn provisions of the FCA to encourage private citizens to expose fraud that the government itself cannot easily uncover.” United States ex rel. Fine v. Sandia Corp., 70 F.3d 568, 572 (10th Cir.1995). Moreover, the 1986 amendments’ expansion of jurisdiction over qui tarn actions reflects Congress’s “concern that the government was not pursuing known instances of fraud.” Ramseyer, 90 F.3d at 1520 (quoting MK-Ferguson Co., 861 F.Supp. at 1551). The statute as amended aims “(1) to encourage private citizens with firsthand knowledge to expose fraud; and (2) to avoid civil actions by opportunists attempting to capitalize on public information without seriously contributing to the disclosure of the fraud.” Id. at 1519-20 (quoting Precision, 971 F.2d at 552). The “public disclosure” bar manifests and serves these purposes by requiring that, if information exists in one of the enumerated sources, and if that information has been publicly disclosed, only an original source of the information may sue. Consideration of the circumstances at issue here reveals several reasons that exercising jurisdiction would not serve the FCA’s purposes of encouraging exposure of fraud or preventing parasitic suits.
First, where a government employee has a duty to report fraud, as Holmes does as postmaster, the information underlying that employee’s suit does not constitute information that the government would not otherwise uncover. The duty to report itself assures that her information is the government’s information. Thus, this is a case of fraud allegations that the government is capable of pursuing.[10]
*1256 Second, an ongoing government investigation demonstrates that the government is in fact pursuing the allegations of fraud. This is true even if, until the government actually initiates an enforcement action, there may be uncertainty as to whether it will do so. Holmes participated in the government investigation pursuant to her duties as postmaster. With respect to that investigation, she is part of the governmental entity. Her qui tam action is not prodding the government to pursue fraud it would not otherwise pursue, because the undisputed facts show that the government is engaged in active pursuit. In fact, Holmes’s own brief states plainly that this was not the purpose of her suit: “After Relator was confident that the government was adequately investigating her information, she filed her lawsuit under the FCA to recover her lawful share of the proceeds.” Therefore, permitting Holmes’s qui tam suit would not serve this aspect of the FCA’s purposes.
Third, these circumstances are not ones in which a private person needs to be encouraged to expose fraud. On the contrary, having acquired the information in the course of her duties as a postmaster, Holmes had a specific obligation as a postmaster to report it. Again we note that, in the performance of her duties as a postmaster, she is part of the governmental entity. As such, she acquired the information for the government. Moreover, a federal employee who reports a private company’s fraud on the government does not have the same fear of reprisal that a company insider who acts as a whistleblower may have, further reducing the need for financial incentives to encourage them to disclose information about fraud.[11]
Finally, allowing federal employees’ qui tam suits in these circumstances would not serve, and would in fact contradict, Congress’s goal of preventing parasitic suits. The purposes we have outlined create a contrast between public and private, between the federal government’s information and private citizens’ independent knowledge. In Ramseyer, we concluded that the public disclosure bar requires actual, not merely theoretical, disclosure. 90 F.3d at 1519. Underlying our reasoning was the assumption that potential qui tam relators do not have access to governmental information that has not been made public:
Information to which the public has potential access, but which has not actually been released to the public, cannot be the basis of a parasitic lawsuit because the relator must base the qui tam suit on information gathered from his or her own investigation. If a specific report detailing instances of fraud is not affirmatively disclosed, but rather is simply ensconced in an obscure government file, an opportunist qui tam plaintiff first would have to know of the report’s existence in order to request access to it.
Id. at 1520. This rationale, however, does not apply to government employees who know of the allegations because of their jobs. Government employees frequently have access to government information even though it has not been “publicly disclosed,” as defined in Ramseyer. Thus, there is a potential for parasitic qui tam suits by government employees before “public disclosure” occurs, just as there is a potential for such suits by private persons following public disclosure.[12]

*1257
S. Conflict of Interest

Federal employees’ obligations to avoid conflicts of interest further distinguish them from others who file qui tam suits. The glaring inconsistency between these limitations on federal employees and allowing federal employees to pursue qui tam suits further supports our conclusion that Congress did not intend to permit federal employees to act as qui tam plaintiffs in these circumstances.
The most relevant among the specific prohibitions on federal employees is the prohibition on the use of “nonpublic Government information”[13] to “further any private interest.” 5 C.F.R. §§ 2635.101(b)(3), 2635.703(a). Other regulations prohibit participation in a government matter in which the employee has a financial interest, id. §§ 2635.402, 2635.501, 2635.502; the use of public office for private gain, id. §§ 2635.101(b)(7), 2635.702; the use of government property or time for personal purposes, id. §§ 2635.704, 2635.705; and holding a financial interest that may conflict with the impartial performance ' of government duties, id. § 2635.403. Moreover, Congress has specifically imposed criminal penalties on government employees who participate in matters in which they have financial interests. 18 U.S.C. § 208.
Holmes has based her qui tam suit on information that she acquired in the course of her employment as a postmaster and had a specific duty to disclose. At least while the government is conducting an ongoing investigation of the allegations, Holmes’s claim for a portion of the proceeds directly reduces the amount that the government may ultimately collect. To allow an employee in Holmes’s position to pursue qui tam claims in these circumstances would give a personal stake in the relevant information to any individual whose duties include reporting fraud. “Rather than perform their jobs as they are required, government employees obligated to disclose suspected fraud may inappropriately hide fraud from their supervisors while preparing their qui tam actions for filing.” United States ex rel. Biddle v. Bd. of Trustees, 161 F.3d 533, 542 (9th Cir.1998) (citation omitted). We cannot conclude that Congress intended to create an incentive for government employees to withhold information about suspected fraud contrary to their specific employment obligations.[14]
*1258 The FCA does not specify how it applies to federal employees. We must assume that Congress intends for federal employees to adhere to applicable statutes and regulations. We have therefore endeavored to construe the FCA in a manner that is consistent with federal employees’ obligations. In light of these obligations, along with the statute’s evident purposes and its distinction between the government and the private relator, we conclude that Congress did not intend to permit a federal employee’s qui tam suit in these circumstances.

III. Conclusion

Allowing jurisdiction in this case would ignore the statute’s distinction between the government and the qui tam plaintiff. It would be directly contrary to the purpose of discouraging parasitic lawsuits and would serve none of the Act’s other purposes. Moreover, it would conflict with Holmes’s obligations as a postmaster employed by the federal government. We therefore hold that Holmes is not a proper relator under the FCA, and the district court properly dismissed her from the case.
We emphasize, however, that we do not hold that federal employees can never be qui tam plaintiffs. For example, a contrary conclusion may be appropriate in a case in which the government has abandoned its investigation and there has been no public disclosure. The employee would no longer be part of a government investigation, and allowing the suit in those circumstances would serve the statutory purpose of revealing to the public and prosecuting fraud that the government has failed to pursue. Assuming that the employee had fulfilled all employment obligations relating to the fraud allegations, there would be no conflict of interest. We also note that, if the government should choose to intervene in such an action, the statute requires the court to limit the qui tam plaintiffs recovery to a maximum of 10% of the proceeds if “the action is one which the court finds to be based primarily on disclosures of specific information (other than information provided by the persons bringing the action)” in certain government sources or the news media. 31 U.S.C. § 3730(d)(1). A different analysis may also be appropriate when a federal employee, much like the typical whistleblowing insider in a private company, acts as an insider to expose another federal employee’s (particularly a direct superior’s) fraud against the government. The employee’s specific employment duties and how the employee learned of the fraud would affect the determinations of whether the employee acted as the government in reporting it, whether it is the sort of disclosure for which Congress intended to provide incentives, and whether allowing the suit would be contrary to conflict of interest principles. While it is beyond the scope of this opinion to consider all the situations that might compel a result different from the one we have reached here, we mention these examples to illustrate the limitations of our holding.
For the foregoing reasons, we AFFIRM the district court’s dismissal of Holmes from the suit for lack of subject matter jurisdiction.

. The statute provides:
No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
31 U.S.C. § 3730(e)(4)(A).

. For purposes of the public disclosure bar, " ‘original source’ means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.” 31 U.S.C. § 3730(e)(4)(B).

. The Sixth Circuit has noted this issue but has not specifically resolved it. Burns v. A.D. Roe Co., 186 F.3d 717, 722 & n. 5 (6th Cir.1999) (declining to address the government’s argument that government employees are precluded from filing qui tam suits, but noting that no court has taken this position). The court did, however, remand for new analysis under the public disclosure bar based on evidence that the relator, who was a government employee, did not receive information pursuant to FOIA requests until after he filed suit. Id. at 726.

. Nor, as the dissent points out, does the legislative history make clear whether Congress intended to permit federal employees to act as qui tam relators.

. This provision is the only indication we have found that Congress specifically contemplated qui tam suits by federal employees. Interestingly, though, this provision addresses an "insider’s” action — an action by an individual who learned in the course of employment (or, more specifically here, military service) of a colleague’s fraud or complicity in a private company’s or individual’s fraud. An insider’s action represents the most typical "whistleblower” suit, and it is insider whistle-blowers who most likely fear retaliation when they act as informers. It may well be that Congress intended to permit qui tam actions by government employees who discover fraudulent activity by or with the complicity of their co-workers or superiors, just as Congress aimed to provide incentives for insiders in the private sector to reveal fraud by their employers. We certainly do not intend to imply that every plaintiff — or even every plaintiff who is a government employee — ■ must be an insider in order to proceed with a qui tam action under the FCA. The distinction between insider and non-insider qui tam *1251 plaintiffs, however, is a significant one with respect to what Congress may have contemplated and intended. Nothing in the statute or the legislative history suggests to us that Congress intended to permit all non-insider actions by government employees. For the reasons we outline in this opinion, we conclude that § 3730 does not authorize Holmes's non-insider action in the particular circumstances of this 'case. We reiterate, though, that we do not have occasion here to define every situation when a government employee may or may not pursue a qui tam action. Unless and until Congress decides to clarify the statute, of course, we may find ourselves faced with other cases that demand further definition of these limits.

. It is beyond the scope of this opinion to delineate the precise bounds of when a federal employee is part of a government investigation because, in this case, the relator was clearly reporting fraud pursuant to her specific government duties.

. Interestingly, our conclusion here echoes the First, Ninth, and Eleventh Circuits’ rejection of a "dual status" argument in the context of the public disclosure bar. In cases before those courts, the government asserted that a government employee who uses government information for private purposes has thereby "publicly disclosed" this information to himself in his private capacity. Williams, 931 F.2d at 1499-1500; United States ex rel. Hagood v. Sonoma County Water Agency, 929 F.2d 1416, 1419-20 (9th Cir.1991) ("Hagood /”); LeBlanc, 913 F.2d at 20. In the First Circuit's words, this argument "requires the assumption that government employees lead schizophrenic lives.” LeBlanc, 913 F.2d at 20. The Ninth Circuit called the proposition "too metaphysical a contention for the interpretation of a plain congressional statement.” Hagood I, 929 F.2d at 1419. Similarly, we reject the notion that an employee in Holmes's position can assume dual roles and act as a qui tam plaintiff for herself and the government. As a federal employee who is part of an ongoing investigation, Holmes is confined to her role as the government with respect to that investigation.
As the dissent acknowledges, our analysis does not rely upon the section 3730(b)'s heading, "Actions by private persons.” We agree with the dissent that such statutory titles and headings generally have marginal interpretive value. We note simply that, if one were to rely upon this heading, it would not necessarily compel the all-or-nothing conclusion that the dissent would draw from it. Rather, it would be quite plausible to interpret this phrase to permit some actions by government *1253 employees (for example, actions based on information acquired independently and not through the individual's government employment, or insider actions against other government employees), while precluding others (for example, non-insider actions based on information obtained in the course of government employment).

. Moreover, Boyle's affidavit specifically states that a postmaster who is acting as a postmaster trainer “is not relieved of his responsibilities as á postmaster, as they pertain to reporting fraud.''

. Before conducting the original source inquiry, the LeBlanc court appears to have concluded that there had been no public disclosure. 913 F.2d at 20. The First Circuit did not explicitly state this conclusion, though it did explicitly reject the district court's basis for finding public disclosure. The district court's rationale was that the relator, having acquired the information as a government employee, disclosed it to himself as a private person. U.S. ex rel. LeBlanc v. Raytheon Co., 729 F.Supp. 170, 175 (D.Mass.1990). The First Circuit specifically rejected this "dual status” argument. LeBlanc, 913 F.2d at 20. It further held that the filing of a qui tam action itself is not a public disclosure. Id. The circuit court did not, however, specify what facts supported a finding of public disclosure in LeBlanc’s case. The Eleventh Circuit, too, has read LeBlanc as holding that there had been no public disclosure. Williams, 931 F.2d at 1500 n. 13. Although the Tenth Circuit does not address the original source question unless there has been a public disclosure, see Ramseyer, 90 F.3d at 1522 n. 6, LeBlanc suggests that the First Circuit has taken a different view, at least with respect to federal employees.
We see only one other plausible interpretation of the LeBlanc opinion. The First Circuit's only indication of why the public disclosure bar might have applied to LeBlanc is its statement that the bar "does not prevent government employees from bringing qui tam actions based on information acquired during the course of their employment but not as the result of a government hearing, investigation or audit or through the news media.” LeBlanc, 913 F.2d at 20 (emphasis added). Thus, if the court in fact concluded that there had been a public disclosure, it must have been because the relator — a former quality assurance specialist for the Government Defense Contract Administrative Service — acquired his information from one of these sources. When it considered the original source exception, the court held that a government employee whose job entailed a specific duty to uncover fraud could not qualify as an original source: "It was LeBlanc's responsibility, a condition of his employment, to uncover fraud. The fruits of his effort belong to his employer — the government. Thus, Le-Blanc was not someone with 'independent knowledge of the information' as required by the statute.” Id. Therefore, even if LeBlanc *1255 requires a finding of public disclosure as a prerequisite to the original source inquiry, the First Circuit’s reasoning arguably produces the same result in Holmes's case as we have reached here.
The Ninth Circuit, too, has considered the effect of job responsibilities on a federal employee’s ability to qualify as an original source, but it has undertaken this inquiry only after determining that there has been a public disclosure. See United States ex rel. Biddle v. Bd. of Trustees, 161 F.3d 533, 542-43 (9th Cir.1998) (holding that a government employee with a specific duty to disclose fraud does not “voluntarily” provide information and thus cannot be an original source); Hagood v. Sonoma County Water Agency, 81 F.3d 1465, 1476 n. 19 (9th Cir.1996) ("Hagood II") (holding that a former attorney for the Army Corps of Engineers was an original source, because his “job was not to expose fraud”); United States ex rel. Fine v. Chevron, U.S.A., Inc., 72 F.3d 740, 743 (9th Cir.1995) (en banc) (holding that an auditor for the Inspector General was not an original source, because his job was to investigate and report fraud). The Eleventh Circuit has declined to analyze this issue, but rejected the assertion that a federal employee can never be an original source. Williams, 931 F.2d at 1501 n. 14. The Tenth Circuit has not had occasion to examine this question, and we find it unnecessary to do so here.

. We emphasize that neither this nor any of the subsequent points in this subsection has dictated the result in this case, particularly not standing alone. Indeed, if we were to accept the proposition that the government's ability to pursue a case in itself precludes a qui tam suit, we would simply adopt the reasoning of the district court. These points *1256 merely illustrate that our holding is consistent with the aims of the statute and the 1986 amendments.

. In addition to the financial incentives for a qui tam plaintiff, the statute addresses this particular concern by providing that an employee who suffers retaliatory action as a re-suit of pursuing or assisting in an action under section 3730 "shall be entitled to all relief necessary to make the employee whole.” 31 U.S.C. § 3730(h).

. Again we note that Holmes’s own brief evidences a specific intent to piggyback on the government's efforts.

. "Nonpublic information” means "information that the employee gains by reason of Federal employment and that he knows or reasonably should know has not been made available to the public.” 5 C.F.R. § 2635.703(b).

. We contrast our reasoning here with the primary policy arguments that the Eleventh Circuit rejected in Williams involving administrative difficulties — specifically, interference with the government’s case and premature disclosure of allegations to defendants. 931 F.2d at 1503. We agree that these concerns do not require excluding government employees from the class of eligible qui tam plaintiffs, and we accord them no weight. The statute demonstrates that Congress considered these concerns (though not specifically with respect to government employees) and chose to mitigate them by other means. 31 U.S.C. § 3730(b)(2)-(3) (requiring that a qui tam plaintiff file the complaint under seal, and allowing the government to seek an extension of the 60-day period during which the complaint remains under seal); (b)(4) (allowing the government to take over a qui tam action by intervention); (c) (limiting the qui tam plaintiff's rights when the government intervenes).
The Williams court, although it noted the government's argument that "the False Claims Act should not allow a personal reward to government employees for the 'parasitical' use of information obtained and developed in the course of government employment,” 931 F.2d at 1503, did not consider the plaintiff's particular employment obligations in this context. Such obligations are an important aspect of our analysis of Holmes's case. Moreover, to the extent that we rely upon the obligation of federal employees, we use these to in *1258 form our interpretation of the statutory language in section 3730(b)(1). We thus disagree with the Eleventh Circuit’s statement that "[t]he False Claims Act is devoid of any statutory language that indicates a jurisdictional bar against government employees as qui tam plaintiffs.” Williams, 931 F.2d at 1504.